IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**WENDELL JONES,**

Petitioner,

v.

Civil Action No. 3:18CV84

**HAROLD W. CLARKE,**

Respondent.

## MEMORANDUM OPINION

Wendell Jones, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1),[1] challenging his convictions in the Circuit Court of the City of Portsmouth, Virginia (hereinafter, "Circuit Court"). In his § 2254 Petition, Jones argues entitlement to relief based upon the following claims:[2]

> Claim One: Counsel rendered ineffective assistance because counsel "fail[ed] to investigate speedy trial violation." (§ 2254 Pet. 8.)

---

[1] Jones originally submitted a typed habeas petition and attached several supporting exhibits. (§ 2254 Pet. 1–15; ECF Nos. 1-1 through 1-3.) By Memorandum Order entered on February 21, 2018, the Court, *inter alia*, directed Jones to complete and return the standardized form for filing a § 2254 petition. (ECF No. 2, at 1.) The Court advised Jones that his response using the standardized form for filing a § 2254 petition would supersede his original petition. (*Id.* at 1–2.) In response, Jones returned a completed standardized form for filing a § 2254 petition. (ECF No. 4.) However, when serving Respondent, the Clerk incorrectly attached ECF No. 1, rather than ECF No. 4, to the Court's Memorandum Order. (*See* ECF No. 8; *see also* ECF No. 8-1.) Under these circumstances, it is unclear which petition Respondent responded to in his Motion to Dismiss and Rule 5 Answer. The Court notes that the grounds for relief in ECF No. 1 and ECF No. 4 are essentially identical; however, in ECF No. 1, Jones included additional arguments in support of his grounds for relief. Therefore, although the Court advised Jones that the standardized form petition would supersede his original petition, in light of the confusion with respect to the service of the petition, and because Jones's original petition included additional supporting arguments, the Court gives Jones the benefit of the doubt and considers the grounds and arguments set forth in ECF No. 1, rather than ECF No. 4.

[2] The Court employs the pagination assigned by the CM/ECF docketing system for citations to Jones's submissions. The Court corrects the spelling, punctuation, and capitalization in the quotations from Jones's submissions. Additionally, the Court omits the emphasis in the quotations from Jones's submissions.

Claim Two: Counsel rendered ineffective assistance because "counsel failed to object and litigate [Jones] being tried for acting in concert where the Indictment failed to inform [Jones of the charges against him]." (*Id.* at 12.)

Respondent moves to dismiss on the grounds that Jones's claims are procedurally defaulted and barred from review here and, in the alternative, that they lack merit. Jones filed an "Opposition to Respondent's Rule 5 Answer and Motion to Dismiss ("Response," ECF No. 16). For the reasons set forth below, the Motion to Dismiss (ECF No. 11) will be GRANTED.

## I. PROCEDURAL HISTORY

On August 20, 2013, Jones pled guilty in the Circuit Court to four counts of robbery. (*See* ECF No. 13–5, at 1.)[3] In exchange for his guilty plea, the Commonwealth moved to *nolle prosequi* the remaining counts of the twenty-nine count Indictment, and the Circuit Court granted the Commonwealth's motion. (*See* ECF No. 1–1, at 2–3.) The Circuit Court entered the Sentencing Order on September 3, 2013, and sentenced Jones to an aggregate term of fifty years of incarceration, with twenty-five years suspended. (*Id.* at 3–4.) Jones noted an appeal, but Jones's counsel failed to file a petition for appeal, and the Court of Appeals of Virginia dismissed the case. (*See* ECF No. 13–1, at 1.)

On February 11, 2015, Jones filed a petition for a writ of habeas corpus in the Circuit Court. (ECF No. 13–2, at 1–18.) In Jones's state habeas petition, he raised the following claims for relief: (a) "Ineffective assistance of counsel" because counsel "fail[ed] to conduct a reasonable pre-trial investigation," and "[s]uch an investigation would have revealed that [Jones's] statutory right to a speedy trial [was] violated" (*id.* at 4); (b) "[Jones's] counsel was ineffective when he advised

---

[3] The Court employs the pagination assigned by the CM/ECF docketing system for citations to Respondent's submissions.

2

[Jones] to reject a plea offer that involved an active term of twenty-five years[4] imprisonment stating that the court would not rule against [Jones] at a scheduled 'suppression hearing'" (*id.* at 6); and, (c) "[Jones's] appellate counsel was ineffective when he failed to file a petition for appeal" (*id.* at 10). The Circuit Court reviewed the merits of Jones's state habeas petition, and denied and dismissed Claims (a) and (b). (ECF No. 1–3, at 12.) With respect to Claim (c), the Circuit Court concluded that Jones was entitled to relief, holding that "in the interest of justice, leave is granted to Jones to file a belated appeal in the Court of Appeals of Virginia." (*Id.*) The Circuit Court issued its final order resolving Jones's state habeas petition on September 15, 2015. (ECF No. 13–4, at 1–2.) Jones did not appeal the Circuit Court's dismissal of Claims (a) and (b) to the Supreme Court of Virginia.

On March 30, 2015, the Court of Appeals of Virginia granted Jones leave "to file a replacement notice of appeal from the judgment rendered against him by the Circuit Court of the City of Portsmouth on September 3, 2013, upon convictions of four counts of robbery (Circuit Court Nos. CR12-1347)." *Jones v. Commonwealth*, No. 0623-15-1, at 1 (Va. Ct. App. Mar. 30, 2015). Subsequently, on June 17, 2015, Jones, proceeding with counsel, filed a petition for appeal, arguing that "[t]he trial court erred in failing to suppress Jones'[s] statement, as the said statement was induced by repeated promises of leniency, both by the police and by an Assistant Commonwealth's Attorney." Petition for Appeal at 2, *Jones v. Commonwealth*, No. 0623-15-1 (Va. Ct. App. filed June 17, 2015).

On October 30, 2015, the Court of Appeals of Virginia denied Jones's petition for appeal. (ECF No. 13–5, at 1.) A three-judge panel also denied the petition for appeal. (ECF No. 13–6, at

---

[4] In his state habeas petition, Jones also stated that the rejected plea offer was for an active term of fifteen years of imprisonment, rather than twenty-five years of imprisonment. (*See, e.g.*, ECF No. 13–2, at 7.)

3

1.) On February 3, 2017, the Supreme Court of Virginia refused the petition for appeal. (ECF No. 13–7, at 1.) On February 5, 2018, the Court received the instant § 2254 Petition. (§ 2254 Pet. 1.)

## II. EXHAUSTION AND PROCEDURAL DEFAULT

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). State exhaustion "is rooted in considerations of federal-state comity," and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (some internal quotation marks omitted) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 & n. 10 (1973)). The purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before the petitioner can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "opportunity" to address the constitutional claims advanced on federal habeas. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks omitted) (quoting *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.*

4

Fair presentation demands that a petitioner present "both the operative facts and the controlling legal principles" to the state court. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks omitted) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994–95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n.1).[5] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citations omitted). Absent a showing of "cause for the default and actual prejudice as a result of the alleged violation of federal law," or a showing that "failure to consider the claims will result in a fundamental miscarriage of justice," this Court cannot review the merits of a defaulted claim. *Coleman*, 501 U.S. at 750; *see Harris v. Reed*, 489 U.S. 255, 262 (1989).

---

[5] In this instance, even though the claim has not been fairly presented to the Supreme Court of Virginia, that court would find the claim procedurally barred. Because a petitioner could not now raise his claims in the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

5

To exhaust his claims, Jones was required to present properly his claims to the Supreme Court of Virginia. Jones raised the first claim in his instant § 2254 Petition – Claim One – in his state habeas petition filed in the Circuit Court, but Jones did not appeal the Circuit Court's denial and dismissal of this claim to the Supreme Court of Virginia. (*See* § 2254 Pet. 8; *see also* ECF No. 13-2, at 4.) Jones raises Claim Two for the first time in his instant § 2254 Petition. If Jones now attempted to raise Claims One and Two in the Supreme Court of Virginia in a habeas petition, that habeas petition would be barred as successive pursuant to section 8.01–654(B)(2) of the Virginia Code,[6] and as untimely pursuant to section 8.01–654(A)(2) of the Virginia Code.[7] Virginia's statute of limitations for habeas actions and the bar on successive habeas petitions are adequate and independent procedural rules when so applied. *See Clagett v. Angelone*, 209 F.3d 370, 379 (4th Cir. 2000); *Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 587–88 (E.D. Va. 2006). Thus, Claims One and Two are defaulted.

Respondent acknowledges that under *Martinez v. Ryan*, 566 U.S. 1 (2012), ineffective assistance of counsel "at initial-review collateral proceedings may establish cause for a prisoner's

---

[6] This statute provides, in relevant part:

Such petition shall contain all allegations the facts of which are known to petitioner at the time of filing and such petition shall enumerate all previous applications and their disposition. No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition.

Va. Code Ann. § 8.01–654(B)(2) (West 2019).

[7] This statute provides:

A habeas corpus petition attacking a criminal conviction or sentence . . . shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later.

Va. Code Ann. § 8.01–654(A)(2) (West 2019).

procedural default of a claim of ineffective assistance at trial." *Id.* at 9. However, *Martinez* fails to excuse the default of Claim One, which was squarely presented at Jones's initial-review collateral proceeding and rejected by the Circuit Court. Instead, Claim One is defaulted because Jones failed to raise it before the Supreme Court of Virginia by appealing the Circuit Court's denial and dismissal of this claim. The explicit language of *Martinez* indicates that its holding applies only to the initial-review collateral proceeding for raising claims of trial counsel error. *See Atkins v. Holloway*, 792 F.3d 654, 661 (6th Cir. 2015) (citations omitted); *Johnson v. Warden of Broad River Corr. Inst.*, No. 12–7270, 2013 WL 856731, at *1 (4th Cir. Mar. 8, 2013) (citing *Martinez*, 566 U.S. at 16). Because the default of Claim One occurred on appeal from the initial-review collateral proceeding, and the lack of appellate counsel cannot serve as cause for the procedural default of Claim One, this claim is barred from review here.[8] *See Norris v. Brooks*, 794 F.3d 401, 405 (3d Cir. 2015) (citations omitted) (explaining that *Martinez* "applies only to attorney error causing procedural default during initial-review collateral proceedings, not collateral appeals"); *Atkins*, 792 F.3d at 661; *Johnson*, 2013 WL 856731, at *1.

For the first time in his Response, Jones argues that his default is excused because he is "actually innocent," and that "failure to consider [his] claim[s] will result in a fundamental miscarriage of justice." (Resp. 4, 7 (citations omitted).)[9] Jones's actual innocence argument is not

---

[8] As discussed herein, with respect to Claim Two, because Jones failed to raise this claim in his state habeas petition in the Circuit Court, *Martinez* may excuse Jones's default of this claim.

[9] In Jones's Response, he also argues, *inter alia*, that "[t]he Court does not have jurisdiction to consider Respondent's Rule 5 Answer and Motion to Dismiss for want of Respondent's signature," and because "none of the opinions, or other exhibits that accompany the Rule 5 Answer/Motion to Dismiss have been authenticated by the Clerk of the Court that they were purportedly obtained from." (Resp. 1–2.) For the reasons that follow, Jones's arguments lack merit. Specifically, with respect to the signature on Respondent's filings, consistent with Rule 11(a) of the Federal Rules of Civil Procedure and this Court's Electronic Case Filing Policies and Procedures, Respondent's counsel electronically filed and signed all filings, and mailed copies of all filings to Jones. (*See* ECF Nos. 11–14); *see also* Fed. R. Civ. P. 11(a); United States District

coupled with any new evidence of his actual innocence. (*See id.* at 4–9.) Instead, Jones's actual innocence argument is based on Jones's interpretation of the Commonwealth's evidence of his guilt. (*See id.*) As discussed below, Jones is neither actually innocent, nor does his conviction result in a fundamental miscarriage of justice.

### III. ACTUAL INNOCENCE

Jones may obtain review of his claims "only if he falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup v. Delo*, 513 U.S. 298, 315–16 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991)). "Claims of actual innocence, whether presented as freestanding ones or merely as gateways to excuse a procedural default, should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) (citations omitted). Here, Jones concedes that "[he] is not claiming that he is innocent and should be set free; rather he is claiming that he is innocent and for this reason the Court should consider his procedurally defaulted and barred constitutional claim." (Resp. 7.) Therefore, the Court reviews Jones's arguments under the more lenient standard for gateway actual innocence claims, because subscribing to Jones's actual innocence claims would permit the Court to consider the merits of his otherwise procedurally defaulted claims.

A gateway claim requires a petitioner to present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. "Because such evidence is obviously

Court Eastern District of Virginia Electronic Case Filing Policies and Procedures Manual, at 28–29, http://www.vaed.uscourts.gov/ecf/documents/New_Manual_01_10_19.pdf. Further, contrary to Jones's assertion regarding the lack of authentication of the state court records, Respondent submitted copies of relevant state court records as exhibits (ECF Nos. 13–1 through 13–9) and requested that the relevant state courts forward the original court orders and records, or certified copies of such materials, to the Court (ECF No. 13–10, at 1–3). The Court subsequently received such records from the relevant state courts. Therefore, Jones's arguments regarding the alleged deficiencies of Respondent's Rule 5 Answer and Motion to Dismiss lack merit.

unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Id.* If a petitioner meets the burden of producing new, truly reliable evidence of his or her innocence, the Court then considers "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial'" and determines whether the petitioner has met the standard for a gateway claim of innocence. *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327–28). The Court must determine "whether 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) (quoting *Schlup*, 513 U.S. at 327–28). "The Court need not proceed to this second step of the inquiry unless the petitioner first supports his or her claim with evidence of the requisite quality." *Hill v. Johnson*, No. 3:09CV659, 2010 WL 5476755, at *5 (E.D. Va. Dec. 30, 2010) (citing *Weeks v. Bowersox*, 119 F.3d 1342, 1352–53 (8th Cir. 1997); *Feaster v. Beshears*, 56 F. Supp. 2d 600, 610 (D. Md. 1999)). Moreover, "actual innocence" means factual innocence and not just legal insufficiency. *See Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citations omitted) (internal quotation marks omitted) ("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence.").

As noted above, Jones's assertion of actual innocence is not coupled with any new evidence of his innocence. Instead, Jones bases his actual innocence argument on his own interpretation of the Commonwealth's evidence of his guilt, arguing that "[he] did not intend to rob, nor did he rob anyone." (Resp. 7.) As support for this argument, Jones contends that the Commonwealth's summary of the evidence in the case, which was presented as the factual basis for Jones's guilty plea and was set forth in the Circuit Court's order denying and dismissing Claims (a) and (b) in Jones's state habeas petition, was insufficient to establish his culpability in the robbery. (*See id.*)

In dismissing Claims (a) and (b) in Jones's state habeas petition, the Circuit Court set forth the following summary of the evidence, which the Commonwealth presented "without objection or correction from Jones or defense counsel" at Jones's guilty plea hearing:

> Your Honor, had this matter went to trial, the Commonwealth would have called various victims who were present at J&L Tires located here in the City of Portsmouth on November 4, 2011.
>
> Around five o'clock in the evening on that day, two customers were getting services done on their vehicle at J&L Tires, those were Julius Mea and Ms. Tamika Ward. Additionally, at the facility there were folks working including a Michael Felix and a Calvin Grays. Calvin Grays is the owner's son, he was helping behind the cash register, and Michael Felix is one of the individuals who was in the work bay working on vehicles.
>
> Wendell Jones, along with Samuel Boone, and a third party we believe to be Reginald Griffin drove to the facility in Wendell Jones'[s] vehicle. We believe Wendell Jones went inside the store with Sam Boone, Wendell Jones had a shotgun, Sam Boone had a handgun. Sam Boone actually took all of the money from all of the individuals, but Mr. Jones assisted him in that he was trying to get money from Calvin Grays. Eventually Sam Boone came in and was able to get the money from Calvin Grays.
>
> They robbed each of those four individuals named in the [I]ndictment, Julius Mea, Michael Felix, Calvin Grays and Tamika Ward, all the money they had on them, their cell phones and some other personal property.
>
> They then left the facility; meanwhile Mr. Dwayne Jones was – or, I'm sorry, Dwayne Perry had been at the site of the facility when he saw these folks go in, Mr. Jones and Mr. Boone, he ran next door, he called 911, he was on the phone with 911 while this was occurring. He saw the black Jaguar that they had come out of – the black Jaguar was owned by Wendell Jones – and he saw the two individuals from the facility run back to the vehicle and the third person was there as a getaway driver, that is the person we believe to be Reginald Griffin.
>
> There then was a brief police pursuit, the police lost the vehicle, they were not able to apprehend anyone at that time.
>
> Shortly thereafter, they found the vehicle abandoned at an abandoned house in Chesapeake, they processed the vehicle, they processed the scene, they recovered the outfits that both individuals were wearing and the ski mask, a shotgun and another mask. The mask – one of the masks came back [with] DNA on [a] 6.5 billion probability to Sam Boone, the other to Wendell Jones.
>
> Nearby Mr. Jones had went to someone's house and called 911 to report his ca[r] stolen along with Mr. Reginald Griffin. The third individual got away – everyone got away that day.
>
> Mr. Jones initially indicated that his car was stolen, he told the police he had let some individuals borrow this car and he had heard that the car was involved in a police chase, so he had went to go to try to track his vehicle down and was not able to locate it.

> Eventually through being interviewed by the police, you know, it took some time for the DNA hits to come back, it was about four or five months before the police had that evidence, they had been talking back and forth to Mr. Jones and eventually he indicated that he was involved in the planning and action of the robbery.
>
> His version was that he provided the vehicle, he provided the clothes, the guns, and he was the getaway driver, which would certainly make him guilty of all of these offenses; however, we believe based upon eyewitness, not certain identification, they would have said to about a seventy-five percent certainty in one case, ninety-nine percent certainty in another, that they thought the man wearing the ski mask was Wendell Jones. The ski mask came back to only one person's DNA, that was Wendell Jones'[s] DNA, but, regardless, he would have been guilty of the robberies.

(ECF No. 1–3, at 3–5 (quoting Aug. 20, 2013 Tr. 25–29).) Jones argues that

> [he] is legally innocent because he went to the location to confront Calvin Grays about money that Grays owed him. [Jones] and Grays quarreled over the money, but petitioner did not possess or display a firearm during the argument. As conceded by Respondent, eventually Sam Boone came in and was able to get the money from Calvin Grays. Boone was able to get the money from Grays because he used and displayed a firearm. Remember, Respondent concedes in an order that is part of the state court record that "Sam Boone actually took all of the money from all of the individuals." This revelation absolves petitioner of any criminal mischief.

(Resp. 8 (citation omitted).) Further, Jones argues that "[i]f [he] did obtain any money from Grays, through Boone, it was under a bona-fide claim of right in that Grays owed [Jones]." (*Id.*) However, these arguments regarding Jones's culpability in the robbery do not constitute "new reliable evidence," as is required to support a claim of actual innocence. *Schlup*, 513 U.S. at 324; *see Calderon*, 523 U.S. at 559 (citations omitted) (explaining that claims of actual innocence must be coupled with evidence of factual innocence, rather than arguments of legal insufficiency). Moreover, as explained in greater detail below, Jones's argument regarding his interpretation of the Commonwealth's evidence lacks merit. *See infra* Part IV.B.

Jones also submits his own affidavit as support for his actual innocence claim. In Jones's affidavit, he states:

11

> I did not accompany Samuel Boone to the business. Boone accompanied me to the business. I went to the business to collect an unpaid debt from Calvin Grays. I did not have a firearm at all. Grays and I quarreled over the money when Boone came in with a firearm and subsequently robbed Grays and Ward. I did not know that Boone had robbed other victims in another part of the structure.

(ECF No. 16–1, at 2.) However, although the affidavit is notarized, the affidavit is not sworn to under penalty of perjury and the notary did not administer an oath. (*See id.* at 3.) Instead, Jones states: "I base the foregoing facts on personal knowledge that I have." (*Id.*) Such a statement fails to transform the contents of the affidavit into sworn testimony. *Price v. Rochford*, 947 F.2d 829, 832 (7th Cir. 1991) (refusing to consider documents verified in such a manner to avoid the penalty of perjury); *Hogge v. Stephens*, No. 3:09CV582, 2011 WL 2161100, at *2–3 & n.5 (E.D. Va. June 1, 2011) (quoting *Walker v. Tyler Cty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2001)) (treating statements sworn to under penalty of perjury, but made upon information and belief, as "mere pleading allegations"). Moreover, rather than demonstrate Jones's innocence, in his affidavit, Jones admits that he "went to the business" intending to "collect" money from at least one of the robbery victims, that he "quarreled" about money with one of the robbery victims, and that subsequently, the robbery of at least two individuals occurred. (ECF No. 16–1, at 2.) Therefore, in Jones's affidavit, he essentially admits to the charged criminal activity, and the affidavit does not constitute "new reliable evidence" of his innocence. *Schlup*, 513 U.S. at 324; (*see* ECF No. 16–1, at 2.)

In summary, with respect to Jones's actual innocence claim, Jones has simply failed to direct the Court to any new, reliable evidence of his innocence. *See Calderon*, 523 U.S. at 559 (emphasizing that new, reliable evidence of innocence is a "rarity"). Thus, the Court need not proceed to the second part of the inquiry for Jones's gateway actual innocence claim. *See Hill*, 2010 WL 5476755, at *5 (citations omitted). Moreover, based on the Commonwealth's summary

of the evidence in the case, as presented at Jones's guilty plea hearing, overwhelming evidence exists of Jones's guilt. (*See* ECF No. 1–3, at 3–5 (quoting Aug. 20, 2013 Tr. 25–29)); *see also infra* Part IV.B. Accordingly, Jones fails to establish that his alleged actual innocence permits the Court to reach the merits of his defaulted claims. Claim One will be DISMISSED.[10]

With respect to Claim Two, because Jones failed to raise this claim in his state habeas petition in the Circuit Court, and he had no counsel at his "initial-review collateral proceeding," *Martinez v. Ryan*, 566 U.S. 1 (2012), the Court turns to the merits of Claim Two.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

---

[10] As set forth previously, Jones's default of Claim One is not excused by *Martinez v. Ryan*, 566 U.S. 1 (2012).

In the context of a guilty plea, the Supreme Court modified the second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Any assertion by Jones that he would not have pled guilty if he had received better assistance from counsel is not dispositive of the issue. *See United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing *Hill*, 474 U.S. at 59–60). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. *See id.* at 369–70. In conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Thus, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) (citations omitted).

### B. Claim Two

In Claim Two, Jones contends that counsel rendered ineffective assistance when "counsel failed to object and litigate [Jones] being tried for acting in concert where the Indictment failed to inform [Jones of the charges against him]." (§ 2254 Pet. 12.) Jones argues that "[c]ounsel's inaction had a negative effect on a viable defense," and "led counsel to erroneously advise [Jones] to enter into a guilty plea." (*Id.* at 15.) As explained below, Jones's claim regarding the

14

inadequacy of the Indictment lacks merit, and Jones's counsel reasonably eschewed the challenge Jones urges here.

With respect to the sufficiency of an indictment, in Virginia, the pertinent statute provides that:

> The indictment or information shall be a plain, concise and definite written statement, (1) naming the accused, (2) describing the offense charged, (3) identifying the county, city or town in which the accused committed the offense, and (4) reciting that the accused committed the offense on or about a certain date. In describing the offense, the indictment or information may use the name given to the offense by the common law, or the indictment or information may state so much of the common law or statutory definition of the offense as is sufficient to advise what offense is charged.

Va. Code Ann. § 19.2–220 (West 2019). That is, "[a]n indictment is sufficient if it gives the accused 'notice of the nature and character of the offense charged so he can make his defense.'" *Satcher v. Virginia*, 421 S.E.2d 821, 828 (Va. 1992) (quoting *Wilder v. Virginia*, 225 S.E.2d 411, 413 (Va. 1976)). Here, Jones's Indictment complied with this standard because the Indictment (1) named Jones as the accused, (2) described the twenty-nine counts against Jones by naming the offenses charged and setting forth the applicable Virginia statutes, (3) identified the City of Portsmouth as the location of the charged offenses, and (4) recited the date of the charged offenses. (ECF No. 13–9, at 1–7.)

Jones contends that the Indictment was deficient because he was not "placed on notice that he was being tried for acting in concert or a principal in the second degree," and he argues that counsel should have raised this issue before Jones pled guilty. (§ 2254 Pet. 13, 15.) In Virginia, "concert of action" is defined "as an 'action that has been planned, arranged, adjusted, agreed on and settled between the parties acting together pursuant to some design or scheme.'" *Berkeley v. Virginia*, 451 S.E.2d 41, 43 (Va. Ct. App. 1994) (citations omitted) (some internal quotation marks omitted). "All participants in such planned enterprises may be held accountable for incidental

15

crimes committed by another participant during the enterprise even though not originally or specifically designed." *Id.* (citations omitted). A principal in the second degree is defined as

> ... one who is present, actually or constructively, assisting the perpetrator in the commission of the crime. In order to make a person a principal in the second degree actual participation in the commission of the crime is not necessary. The test is whether or not he was encouraging, inciting, or in some manner offering aid in the commission of the crime. If he was present lending countenance, or otherwise aiding while another did the act, he is an aider and abettor or principal in the second degree.

*Muhammad v. Virginia*, 619 S.E.2d 16, 33 (Va. 2005) (citation omitted). "Generally in Virginia, a principal in the second degree is subject to the same punishment as the principal in the first degree," who is the "actual perpetrator of the crime." *Id.* (citation omitted).

Jones claims that "[he] was indicted for robberies where he did not take any property from either of the four victims," and "[he] was not even in the same part of the building where the robbery of three of the victims took place by Samuel Boone." (§ 2254 Pet. 12.) Jones also claims that "[a]s to the fourth victim, the Commonwealth concedes that Samuel Boone also took the money from that victim." (*Id.* (citing ECF No. 1–3).) Jones asserts that the Commonwealth's evidence showed that he "did not take any property" and that he "was not present" during some of the robberies. (*Id.* at 12–13.) Jones is wrong. The Commonwealth proffered, *inter alia*, that

> Wendell Jones, along with Samuel Boone, and a third party we believe to be Reginald Griffin drove to the facility in Wendell Jones'[s] vehicle. We believe Wendell Jones went inside the store with Sam Boone, Wendell Jones had a shotgun, Sam Boone had a handgun. Sam Boone actually took all of the money from all of the individuals, but Mr. Jones assisted him in that he was trying to get money from Calvin Grays. Eventually Sam Boone came in and was able to get the money from Calvin Grays.
> They robbed each of those four individuals named in the [I]ndictment, Julius Mea, Michael Felix, Calvin Grays and Tamika Ward, all the money they had on them, their cell phones and some other personal property.

(ECF No. 1–3, at 4 (citation omitted).) Although the Commonwealth's proffered evidence indicates that "Sam Boone actually took all of the money from all of the individuals," the

16

Commonwealth proffered that Jones was carrying a shotgun, was "inside the store with Sam Boone," and "assisted [Boone]." (*Id.*) The Commonwealth also proffered that Jones and Boone "robbed each of those four individuals named in the [I]ndictment." (*Id.*) Further, the Commonwealth proffered that two witnesses, one with "a seventy-five percent certainty" and the other with a "ninety-nine percent certainty," identified Jones as the robber "wearing the ski mask," and "[t]he ski mask came back to only one person's DNA, that was Wendell Jones'[s] DNA." (*Id.* at 5.)

Therefore, contrary to Jones's assertion that the Commonwealth's evidence in the case was such that the Indictment should have charged Jones as "acting in concert or a principal in the second degree," the evidence proffered by the Commonwealth, and agreed to by Jones when he pled guilty, showed that Jones participated in the robberies and was an "actual perpetrator of the crime." *Muhammad*, 619 S.E.2d at 33 (citation omitted); *Berkeley*, 451 S.E.2d at 43; (§ 2254 Pet. 13.) Because the Indictment put Jones on notice as to "the nature and character of the offense[s] charged" and the Indictment complied with the applicable Virginia statute, counsel reasonably eschewed the challenge Jones urges here. *Satcher*, 421 S.E.2d at 828 (citation omitted) (internal quotation marks omitted); *see* Va. Code Ann. § 19.2–220 (West 2019); (*see also* ECF No. 13–9.) Furthermore, given that counsel reasonably eschewed raising a meritless argument regarding the sufficiency of the Indictment, Jones fails to demonstrate that counsel's inaction regarding this meritless argument resulted in any deficiency of counsel or resulting prejudice with respect to counsel's advice about the guilty plea offer. *See Hill*, 474 U.S. at 59; (*see also* § 2254 Pet. 15.) Accordingly, Claim Two lacks merit and will be DISMISSED.

## V. CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 11) will be GRANTED. Jones's claims will be DISMISSED, and his § 2254 Petition will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED.[11]

An appropriate Final Order shall issue.

Date: 25 February 2019
Richmond, Virginia

/s/ JSJ
John A. Gibney, Jr.
United States District Judge

---

[11] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Jones fails to meet this standard.